```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JAMES R. FISHER, JR.,

                                        Plaintiff,
                                                              9:13-CV-0213
v.                                                            (BKS/TWD)

FAY JENKS, DAVID M. LAYING,[1]
RYAN H. POLNIAK,

                                        Defendants.
_____

APPEARANCES:                                          OF COUNSEL:

JAMES R. FISHER, JR., 13-A-1445
Plaintiff pro se
Franklin Correctional Facility
P.O. Box 10
Malone, New York 12953

SUGARMAN LAW FIRM LLP                                 PAUL V. MULLIN, ESQ.
Counsel for Defendants
211 West Jefferson Street
Syracuse, New York 13202

THÉRÈSE WILEY DANCKS, United States Magistrate Judge
```

## REPORT-RECOMMENDATION and ORDER

This pro se prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has been referred to me for Report and Recommendation by the Honorable Brenda K. Sannes, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). Plaintiff James R. Fisher, Jr., claims that Defendants subjected him to excessive force during the course of an arrest. (Dkt. No. 1.) Currently pending before the Court is Defendants' motion for summary judgment

---

[1] This Defendant is listed in the caption as David M. Laying. The correct spelling of his surname is "Layng." (Dkt. No. 26-16 at 1.) The Clerk is directed to correct the caption.

pursuant to Federal Rule of Civil Procedure 56.  (Dkt. No. 26.)  For the reasons discussed below, I recommend that the Court grant Defendants' motion.

I.	FACTUAL AND PROCEDURAL SUMMARY

In the early morning of January 9, 2013, there was a radio transmission from non-defendant Officer Timothy Murray requesting assistance regarding a male suspect in the back yard of the Ogdensburg Police Department.  (Dkt. No. 26-17 ¶ 3; Dkt. No. 26-20 ¶ 3.)  Defendant Patrolman Ryan H. Polniak and Defendant Sergeant Fay B. Jenks responded to the transmission.  (Dkt. No. 26-17 ¶ 4; Dkt. No. 26-20 ¶ 4.)  Defendant Polniak arrived first and observed the suspect, later identified as Plaintiff, carrying an object and attempting to leave the back yard of the police station, which is an area designated for police parking.  (Dkt. No. 26-17 ¶¶ 4-5.)  Defendant Polniak ordered Plaintiff to stop and drop the object.  *Id.* ¶ 5.  Plaintiff threw the object, which was later identified as a spray can.  *Id.*  Defendant Polniak advised Plaintiff that he was under arrest and placed him in handcuffs.  *Id.* ¶ 6.  Defendant Jenks then arrived from inside of the police station to assist in escorting Plaintiff into the building. (Dkt. No. 26-17 ¶ 6; Dkt. No. 26-20 ¶ 4.)  Defendant Jenks declares that "[t]he officers advised that Mr. Fisher had been near the patrol cars parked behind the police station.  It was at this time that we discovered that obscenities and other markings had been spray painted on the outside of several of the patrol cars."  (Dkt No. 26- 20 ¶ 5.)  Defendant Jenks observed a powder substance falling from the inside of Plaintiff's winter coat.  *Id.* ¶ 6.  This powder substance was later identified as sugar.  *Id.*  It was eventually discovered that sugar had been placed inside the gasoline tank of the patrol car used by the Chief of the Ogdensburg Police Department.  *Id.*

Defendants Polniak and Jenks declare that as they attempted to escort Plaintiff into the police station, he became belligerent and issued verbal threats, such as that he was going to kill the officers' families and slit their throats. (Dkt. No. 26-17 ¶ 7; Dkt. No. 26-20 ¶ 7.) Plaintiff also yelled obscenities and struggled with the officers by attempting to push and trip them. (Dkt. No. 26-17 ¶ 7; Dkt. No. 26-20 ¶ 7.) Defendants declare that after they were inside of the police station, Plaintiff successfully tripped Defendant Jenks, causing Defendant Jenks to fall and hit his head on the wall, causing minor injuries. (Dkt. No. 26-17 ¶ 8; Dkt. No. 26-20 ¶ 8.)

Plaintiff alleges in his verified complaint that Defendants "roughly pushed" and "manhandled" Plaintiff into the police station while making disrespectful and degrading comments. (Dkt. No. 1 at 4.) Plaintiff further alleges that once they were inside the police station, Defendant Jenks threw Plaintiff into a wall. *Id.* at 4-5. Plaintiff alleges that he did not resist Defendants at any time. *Id.* at 5. Plaintiff alleges that, as a result of Defendants' actions, he suffered severe pain and swelling that lasted approximately two weeks as well as bruises on his arms and a cut on his right knee. *Id.* Defendant Jenks declares that "[a]t no time did I throw Mr. Fisher face first into a wall as alleged in his Complaint." (Dkt. No. 26-20 ¶ 14.) Defendant Polniak declares that "[a]t no time did either I, or any other officer I observed, strike, punch, or throw Mr. Fisher into a wall." (Dkt. No. 26-17 ¶ 14.)

Defendant Polniak declares that Defendant Jenks collected himself after falling and continued to escort Plaintiff towards the processing room with the assistance of Officer Murray. (Dkt. No. 26-17 ¶ 8.) Once inside of the processing room, Plaintiff was placed in a chair. (Dkt. No. 26-20 ¶ 9.) Plaintiff continued to act in an aggressive manner by repeatedly attempting to get out of his chair and lunging at officers in the room. *Id.* Plaintiff was then placed on his knees

and lowered to the ground and placed on his stomach so a search of his person could be conducted for potential weapons and/or contraband. *Id.* ¶ 10. Plaintiff resisted the officers' attempts to search him and continued to act in a belligerent and combative manner. *Id.*

Defendant Polniak entered the room while the search was conducted. (Dkt. No. 26-17 ¶ 9.) When the search was complete, Plaintiff was placed back in a chair. *Id.* ¶ 10. The officers then attempted to complete an arrest report and process Plaintiff, but he continued to act aggressively. *Id.* ¶ 11. This included lunging at Defendant Polniak and yelling that he was going to bite his face. *Id.* In response, Defendant Polniak used one hand to push Plaintiff back in the chest while simultaneously using the other hand to place Plaintiff back in the chair. *Id.*

Due to Plaintiff's behavior, the officers were unable to fingerprint or otherwise complete processing. (Dkt. No. 26-20 ¶ 10.) Plaintiff was placed in a holding cell until he could calm down enough to be processed. (Dkt. No. 26-17 ¶ 12; Dkt. No. 26-20 ¶ 11.) Plaintiff was uncooperative and resisted the officers attempts to put him in the cell. (Dkt. No. 26-20 ¶ 11.)

Once in the holding cell, Plaintiff placed what appeared to be wet toilet paper over the cell's camera lens. (Dkt. No. 26-17 ¶ 12; Dkt. No. 26-20 ¶ 12.) Plaintiff then used large amounts of toilet paper, socks, and a t-shirt to clog the cell's toilet, causing it to flood. *Id.* This required Defendants Polniak and Jenks to enter the cell and move Plaintiff to a different area, where he eventually calmed down. (Dkt. No. 26-17 ¶ 13; Dkt. No. 26-20 ¶ 12.) Plaintiff was booked several hours later after Defendant Polniak was off duty. (Dkt. No. 26-17 ¶ 13.)

Defendant Polniak declares that he never observed visible injuries on Plaintiff. (Dkt. No. 26-17 ¶ 15.) Defendants Polniak and Jenks declare that Plaintiff never complained of any pain or injuries. (Dkt. No. 26-17 ¶ 15; Dkt. No. 26-20 ¶ 13.) No injuries are visible in booking photos

taken at the Ogdensburg Police Department or later that day at the St. Lawrence County Correctional Facility. (Dkt. No. 26-21 at 2-3.)

During these events, Defendant Detective David M. Layng was at home. (Dkt. No. 26-16 ¶ 3.) Defendant Layng was contacted and advised that several patrol cars had been vandalized. *Id.* Defendant Layng arrived at the police station to conduct an investigation and process the damage that had been done to the police cars. *Id.* ¶ 4. Defendant Layng did not come into contact with Plaintiff. *Id.* ¶ 5.

Plaintiff filed the verified complaint in this action on February 26, 2013. (Dkt. No. 1.) The complaint characterized the action as having been brought under the Eighth Amendment. *Id.* at 6. Defendants moved to dismiss, arguing that the Eighth Amendment did not apply here because Plaintiff was an arrestee rather than a convicted prisoner. (Dkt. No. 12.) The Court granted the motion in part, dismissing the Eighth Amendment claim without leave to amend. (Dkt. Nos. 17-18.) However, in light of the special solicitude that must be extended to pro se civil rights litigants, the Court directed Defendants to respond to Plaintiff's excessive force claim as if it had been asserted under the Fourth Amendment. *Id.*

Defendants now move for summary judgment. (Dkt. No. 26.) Plaintiff has not opposed the motion, despite being warned of the consequences of failing to respond and being given several extensions of time in which to do so. (Dkt. Nos. 27, 30, 32, 34.)

## II. APPLICABLE LEGAL STANDARDS

### A. Legal Standard Governing Motions for Summary Judgment

Under Federal Rule of Civil Procedure 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled

to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists. *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006). Only after the moving party has met this burden is the nonmoving party required to produce evidence demonstrating that genuine issues of material fact exist. *Id*. at 273. The nonmoving party must do more than "rest upon the mere allegations . . . of [the plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 & n.11 (1986). Rather, a dispute regarding a material fact is *genuine* "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material[2] fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008).

B.     **Failure to Oppose a Motion for Summary Judgment**

When a plaintiff fails to respond to a defendant's motion for summary judgment, "[t]he fact that there has been no [such] response . . . does not . . . mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). Rather, the Court must (1) determine what material facts, if any, are undisputed in the record; and (2) assure itself that, based on the undisputed material facts, the law indeed warrants judgment for the defendants. *See Champion*, 76 F.3d at 486; *Allen v. Comprehensive Analytical Grp., Inc.*, 140 F. Supp. 2d 229,

---

[2]     A fact is "material" only if it would have some effect on the outcome of the suit. *Anderson*, 477 U.S. at 248.

232 (N.D.N.Y. 2001); L.R. 7.1(b)(3).

Where a plaintiff has failed to properly respond to a defendant's Statement of Material Facts (its "Rule 7.1 Statement"), the facts as set forth in that Rule 7.1 Statement will be accepted as true to the extent that (1) those facts are supported by the evidence in the record, and (2) the non-moving party, if he is proceeding pro se, has been specifically advised of the potential consequences of failing to respond to the movant's motion for summary judgment. *See* L.R. 7.1(a)(3); *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004); *Champion*, 76 F.3d at 486.

### III. ANALYSIS

Broadly construed, the complaint alleges that Defendants violated Plaintiff's Fourth Amendment rights by using excessive force during an arrest. (Dkt. Nos. 17-18.) Defendants argue that they are entitled to summary judgment because any force used was objectively reasonable under the circumstances, Plaintiff suffered at most only *de minimis* injuries, and Defendant Layng was not personally involved in the incident. (Dkt. No. 26-12.) Defendants are correct.

"The Fourth Amendment protects individuals from the government's use of excessive force while detaining or arresting individuals." *Jones v. Parmley*, 465 F.3d 46, 61 (2d Cir. 2006) (citing *Thomas v. Roach*, 165 F.3d 137, 143 (2d Cir. 1999)). "When determining whether police officers have employed excessive force in the arrest context, the Supreme Court has instructed that courts should examine whether the use of force is objectively reasonable 'in light of the facts and circumstances confronting them, without regard to the officers' underlying intent or motivation.'" *Jones*, 465 F.3d at 61 (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989))

7

(punctuation omitted). Among the most relevant facts and circumstances are (1) the severity of the crime allegedly committed; (2) the threat of danger to the officer and society; and (3) whether the suspect was resisting or attempting to evade arrest. *Thomas*, 165 F.3d at 143. In addition, "[t]o succeed on a claim for excessive force . . . , a plaintiff must . . . present sufficient evidence to establish that the alleged use of force is objectively serious or harmful enough to be actionable." *Jackson v. City of New York*, 939 F. Supp. 2d 219, 231 (E.D.N.Y. 2013). "*De minimis* injury can serve as conclusive evidence that *de minimis* force was used." *Washpon v. Parr*, 561 F. Supp. 2d 394, 407 (S.D.N.Y. 2008).

Defendants have met their initial burden of demonstrating that they are entitled to judgment as a matter of law. In moving for summary judgment, Defendants declare that Plaintiff was belligerent and unruly. (Dkt. No. 26-17 ¶¶ 7-9, 11; Dkt. No. 26-20 ¶¶ 7-8 .) Defendants note that, by his own account, Plaintiff was inebriated during these events. (Dkt. No. 26-11 ¶ 32, citing Dkt. No. 1 at 5.) Defendant Jenks declares that he never threw Plaintiff into a wall as alleged in the complaint. (Dkt. No. 26-20 ¶ 14.) Defendant Jenks declares that Plaintiff was placed on his knees and lowered to the ground in order to facilitate a search for weapons or contraband. *Id*. ¶ 10. Defendant Polniak alleges that he used one hand to push Plaintiff in the chest while simultaneously using the other hand to place Plaintiff in a chair when Plaintiff lunged at him. (Dkt. No. 26-17 ¶ 11.) Defendants did not observe any visible injuries on Plaintiff, Plaintiff never complained of pain or injuries, and booking photos showed no visible injuries. (Dkt. No. 26-17 ¶ 15; Dkt. No. 26-20 ¶ 13; Dkt. No. 26-21 at 2-3.) Defendant Layng did not come into contact with Plaintiff at all. (Dkt. No. 26-16 ¶ 5.) Based on these undisputed facts, no trier of fact could conclude that Defendants used more force than was objectively reasonable

8

under the circumstances.

Plaintiff has not met his burden of producing admissible evidence that a genuine issue of material fact exists. As noted above, Plaintiff has not opposed the motion for summary judgment. Although courts are authorized to consider statements in a verified complaint as evidence, this generally applies only where the plaintiff has filed some sort of opposition to a pending dispositive motion. *See Patterson v. Cnty. of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004) (noting that where plaintiff had opposed motion, "a verified pleading . . . has the effect of an affidavit and may be relied upon to oppose summary judgment."); *Fitzgerald v. Henderson*, 251 F.3d 345, 361 (2d Cir. 2001) (noting that plaintiff who opposed motion "was entitled to rely on [the verified amended complaint] in opposing summary judgment"); *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) (noting where plaintiff opposed motion that "[a] verified complaint is to be treated as an affidavit for summary judgment purposes") (citations omitted). Here, because Plaintiff has not opposed the motion for summary judgment, the Court is not required to consider the version of events set forth in the verified complaint as evidence.

Even if the Court were to consider the statements in the verified complaint as evidence, they would be insufficient to raise a triable issue of fact. In general, of course, "[c]redibility determinations . . . are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255; *see also Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996) ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment."). There is, however, a "narrow exception" to the general rule that credibility determinations are not to be made on summary judgment. *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005); *Blake v. Race*, 487 F. Supp. 2d 187, 202 (E.D.N.Y. 2007). In *Jeffreys*,

9

the Second Circuit held that in the "rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete," the court may appropriately conclude at the summary judgment stage that no reasonable jury would credit the plaintiff's testimony. *Jeffreys*, 426 F.3d at 554. The *Jeffreys* exception is most applicable where the plaintiff's version of events is contradicted by defense testimony. In *Jeffreys*, for instance, one of the arresting officers declared that, contrary to the plaintiff's version of events, he was the only officer who entered the room where the plaintiff was allegedly beaten and that he saw the plaintiff jump out an open window. *Jeffreys*, 426 F.3d at 551-52. Here, the only version of events that supports Plaintiff's claim is his own testimony in the verified complaint, which is contradicted by the booking photographs (which show no visible facial injuries) and Defendants' sworn affidavits directly disputing Plaintiff's version of events. Under *Jeffreys*, no reasonable juror would credit Plaintiff's testimony.

Summary judgment would be warranted even if the Court treated the verified complaint as an affidavit and, further, found that the *Jeffreys* exception does not apply. By Plaintiff's own account, the only injuries he suffered were severe pain and swelling that lasted approximately two weeks, bruises on his arms, and a cut on his right knee. (Dkt. No. 1 at 5.) These types of injuries have been held to be *de minimis* and indicative that excessive force was not used. *See Washpon*, 561 F. Supp. 2d at 407 (temporary swelling, inflammation, and soreness insufficient to sustain Fourth Amendment excessive force claim). Therefore, I recommend that the Court grant Defendants' motion for summary judgment.

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 26) be

**GRANTED** and it is further

**ORDERED** that the Clerk change the spelling of Defendant David M. Laying's surname from "Laying" to "Layng."

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).

Dated: July 15, 2015
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge